**FILED**
JUL 1 5 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVE FOSTER,

Plaintiff,

v.

UNITED STATES BUREAU OF PRISONS,
*et al.*,

Defendants.

Civil Action No. *14-1188*

## MEMORANDUM OPINION

This matter is before the Court on its initial review of *pro se* Plaintiff Steve Foster's Application to Proceed *in Forma Pauperis* and his accompanying Complaint. The Application will be granted, but Plaintiff's Complaint, which challenges his incarceration and the operative parole guidelines, does not fare so well. While the pleading is short on facts, it is long enough to demonstrate that Foster cannot succeed here. The case, consequently, will be dismissed pursuant to 28 U.S.C. § 1915A, which requires the Court to screen and dismiss a prisoner's complaint upon a determination that it fails to state a claim.

**I.    Background**

Plaintiff Foster is currently incarcerated in the United States Penitentiary, Hazelton, located in Bruceton Mills, West Virginia. He alleges that in 1986 a D.C. Superior Court judge sentenced him to fifteen years in prison, and that "the sentence was to be served at 65% or a total of Nine years and (7) months," with a further 389-day credit for time served. Compl. at 2; see also United States v. Foster, 1985 FEL 1590 (D.C. Super. Ct. March 26, 1986). In 1998, while Foster was still incarcerated, all D.C. felony prisoners were transferred to federal custody under



the supervision of the U.S. Bureau of Prisons. See National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105–33, 111 Stat. 712. Once in BOP custody, Plaintiff alleges, his original sentence "was converted into [a] (45) year term or life term." Compl. at 2.

Foster also alleges that at the time of his sentencing, the "old law" was in effect – a reference to D.C.'s 1972 parole guidelines. See Watson v. Parole Comm'n, 869 F. Supp. 2d 145, 147-48 n.3 (D.D.C. 2012). Those guidelines were open ended and left the decision of whether to grant parole almost entirely to the discretion of the D.C. Parole Board; today, by contrast, the U.S. Parole Commission employs guidelines that were finalized in 2000 and involve a detailed point system. See Sellmon v. Reilly, 551 F. Supp. 2d 66, 72-73, 86 n.15 (D.D.C. 2008). In 1998, when he was transferred to the federal system, therefore, he alleges that BOP "change[d] the method of release" to "only by the approval of the United States Parole Commission," which in turn applies the later 2000 parole guidelines. Compl. at 2 (internal quotation marks omitted). This action, he claims, effectively "resentenced all District of Columbia felons." Id. Plaintiff urges the Court to "stop and bar any more of these false parole hearings that have thousands of [District] of Columbia felons being held in violation of the rule of law." Id. at 3 (internal quotation marks omitted). He names as Defendants the BOP and the Parole Commission.

**II.    Analysis**

Despite a commendable run at some complex issues, Foster does not prevail on either the alleged "conversion" of his sentence or the retroactive application of the 2000 parole guidelines.

Plaintiff first challenges BOP's calculation of his sentence, styling his suit as one arising under 42 U.S.C. § 1983, apparently seeking declaratory and injunctive relief. See id. at 2-3. Unfortunately for him, however, where a prisoner "challeng[es] the very fact or duration of his

physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (emphasis added); accord Muhammad v. Close, 540 U.S. 749, 750 (2004)). Although this habeas-channeling requirement is limited to actions going to the "core" of the writ, Aamer v. Obama, 742 F.3d 1023, 1037 (D.C. Cir. 2014), Foster's allegation that his sentence was improperly converted to life imprisonment is certainly that type. In such a case, "a prisoner cannot bring a civil action seeking a declaratory judgment in order to obtain his release." Watson, 869 F. Supp. 2d at 149 (citing LoBue v. Christopher, 82 F.3d 1081, 1082 (D.C. Cir. 1996); Monk v. Sec'y of the Navy, 793 F.2d 364, 366 (D.C. Cir. 1986)); accord Ceasar v. Bureau of Prisons, 532 F. Supp. 2d 1, 3 (D.D.C. 2008) ("a challenge to the duration of a prisoner's confinement is a habeas claim," not a civil action).

Plaintiff's claim that his stay in Hazelton has been improperly extended, therefore, sounds in habeas. Habeas, however, is a doctrine subject to statutory and jurisdictional limitations, see Braden v. 30th Judicial Cir. Ct. of Ky., 410 U.S. 484 (1973), which in this case are fatal to Plaintiff's claim. When a habeas petitioner is presently incarcerated, the appropriate defendant is his current warden, who must in turn be within the district court's territorial jurisdiction. See Rumsfeld v. Padilla, 542 U.S. 426, 434-35, 442-44 (2004); accord Stokes v. Parole Comm'n, 374 F.3d 1235, 1239 (D.C. Cir. 2004); Guerra v. Meese, 786 F.2d 414, 415 (D.C. Cir. 1986). BOP, accordingly, is not the appropriate defendant, and that person – the warden of Foster's West Virginia prison – is not within this jurisdiction. Any habeas claim must thus be brought in that state and against Plaintiff's jailer. See Ceasar, 532 F. Supp. 2d at 3 (holding under similar circumstances that BOP is not the appropriate defendant and this is not the appropriate jurisdiction); accord Connally v. Reno, 896 F. Supp. 32, 35 (D.D.C. 1995)

(holding that Director of BOP is not appropriate defendant in habeas action challenging present confinement) (citing Ex parte Endo, 323 U.S. 283, 306 (1944)).

Turning next to Foster's allegation against the Parole Commission, the Court assumes for purposes of this case that a § 1983 action, as opposed to habeas, is an appropriate vehicle for his grievance about the Parole Commission's retroactive application of the 2000 parole guidelines. This is so because, it appears, those guidelines would not guarantee a reduction in his sentence. See Davis v. U.S. Sentencing Comm'n, 716 F.3d 660, 666 (D.C. Cir. 2013) ("[W]e hold that a federal prisoner need bring his claim in habeas only if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'") (quoting Wilkinson v. Dotson, 544 U.S. 74, 82 (2005)). Relying on recent court rulings in Watson, 869 F. Supp. 2d 145, and Peugh v. United States, 133 S. Ct. 2072 (2013), Plaintiff contends that he "and thousands of others can show a violation" of the Constitution's prohibition on *ex post facto* laws. Compl. at 1.[1] Neither precedent, however, supports Plaintiff's claims.

It is true that an *ex post facto* violation might occur in the context of parole proceedings, when regulations or guidelines enacted after a prisoner's sentencing are applied retroactively so as to create a "'significant risk' of 'a longer period of incarceration than under the earlier rule.'" Sellmon, 551 F. Supp. 2d at 84 (quoting Garner v. Jones, 529 U.S. 244, 255 (2000)). Foster, however, has not even attempted to allege that application of the 2000 guidelines would subject him to a longer period of incarceration than the 1972 ones in place at the time he was originally sentenced. This is because it is not correct. Examining the same pair of parole guidelines in Watson, Judge Bates observed:

> At the time plaintiff committed [his offense] "parole eligibility was determined by a D.C. Parole Board that operated with nearly

---

[1] In federal court, a litigant proceeding *pro se* cannot represent any other individual. See 28 U.S.C. § 1654. The Court's resolution of this case, accordingly, is limited to Plaintiff alone.

4

> complete discretion" .... Given the totally unfettered discretion
> under which the Parole Board operated in those days, ... the Court
> cannot conclude that plaintiff would have fared better under a prior
> regime.

869 F. Supp. 2d at 150 (quoting Wilson v. Fulwood, 772 F. Supp. 2d 246, 252 (D.D.C. 2011)) (some internal quotation marks omitted); see also Sellmon, 561 F. Supp. 2d at 50 (discussing "totally unstructured character of the Board's parole decisions prior to 1987"). The Court sees no reason to depart from this reasoning and similarly concludes that the application of the 2000 guidelines does not create a "significant risk of a longer period of incarceration" than under the earlier 1972 rule. See Phillips v. Fulwood, 616 F.3d 577, 583 (D.C. Cir. 2010) ("[B]ecause [plaintiff] cannot demonstrate that the Commission's application of the 2000 regulations created or 'creates a significant risk of prolonging [his] incarceration,' he has no claim under the Ex Post Facto Clause." ) (quoting Garner v. Jones, 529 U.S. 244, 255 (2000)) (third alteration in original).

Foster's reliance on Peugh is similarly unavailing. There, unlike here, the retroactive application of sentencing guidelines did in fact subject a criminal defendant to a longer period of incarceration. See Peugh, 133 S. Ct. at 2084-85. As Foster cannot demonstrate an *ex post facto* violation the Court will dismiss his claim.

### III. Conclusion

For the reasons articulated herein, the Court will issue a contemporaneous Order dismissing this case without prejudice.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 11, 2014